# Exhibit 3



152762.1

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

JUL 9 1996

NANCY DOHERTY, CLERK
By _____
Deputy

ROBROY INDUSTRIES - TEXAS,
INC., a Delaware corporation, and
ROBROY INDUSTRIES, INC., a
Pennsylvania corporation,

           Plaintiffs,

           v.

OCAL, INC., a Delaware
corporation, and OCAL
INDUSTRIES, an Alabama
corporation.

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.

FILED
CLERK, U.S. DISTRICT COURT
96 - 8192 RAP (SHx)
NOV 2 1 1996
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

3 - 96 CV 1905 - X

## COMPLAINT

The Plaintiffs, Robroy Industries - Texas, Inc. ("Robroy-Texas") and
Robroy Industries, Inc. ("Robroy") by their counsel, Cohen & Grigsby, P.C. and
Richards, Medlock & Andrews, P.C., bring the following causes of action
against Defendants, Ocal, Inc. ("Ocal") and Ocal Incorporated ("Ocal-Alabama")
and in support thereof represent the following:

### Parties

1.    Robroy is a Delaware corporation with its principal place of
business at Highway 271 & Dean Street, Gilmer, Texas. It does business as
Robroy Industries - Conduit Division.

2.    Robroy is a Pennsylvania corporation with its principal place
of business in Verona, Pennsylvania.

- 30 -

EXHIBIT 2

152762.1

3.     Ocal is a Delaware corporation with its corporate offices located at 14538 Keswick Street, Van Nuys, California.

4.     Ocal-Alabama is an Alabama corporation with its operations located in Mobile, Alabama.

<u>Jurisdiction and Venue</u>

5.     This action is brought pursuant to section 34 of the Lanham Act, 15 U.S.C. § 1116, and this court has jurisdiction pursuant to 28 U.S.C. § 1331.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events complained of occurred within this district and the defendants are doing business in this district.

<u>Factual Background</u>

7.     Robroy-Texas is a manufacturer of a PVC-coated rigid metal conduit ("coated conduit"). This conduit is used in corrosive environments such as electric power plants, oil refining and chemical plants.

8.     The coated conduit is made of galvanized steel which then is coated with polyvinyl chloride for additional protection.

9.     Ocal-Alabama is a competitor of Robroy-Texas in the manufacture and sale of the coated conduit. Ocal is the parent company of Ocal-Alabama.

10.     Both Ocal-Alabama and Robroy-Texas sell PVC-coated rigid metal conduit pursuant to listings from Underwriters Laboratory ("UL"). UL is a not-for-profit organization dedicated to public safety. UL promulgates and publishes safety standards for electrical equipment, devices, and related

-2-

EXHIBIT 2

152762.1

products. UL also provides a "Listing Service." Under UL's Listing Service, manufacturers of products submit samples of their products for testing and evaluation by UL safety engineers. After examination and testing, UL issues a report of its investigation setting forth the test results and stating whether the product is adjudged to be in compliance with UL's requirements. A product which does comply is eligible to be "listed" pursuant to agreements between the manufacturer and UL. The manufacturer is authorized under these agreements to affix those products which comply with the UL requirements the "UL Listed" mark.

11.     Robroy-Texas' coated conduit is sold with a label affixed stating that the product is UL listed.

12.     In order to maintain its UL listing, Robroy-Texas submits to regular inspections of its premises and products by UL personnel, and UL personnel selects and submits samples of Robroy-Texas' products to UL Laboratories for inspection and testing.

13.     UL has adopted a "standard for safety covering rigid metal conduit whether it is coated with PVC or not. This standard is called "Standard for Safety UL 6: Rigid Metal Conduit" ("UL 6").

14.     In order to be marketed and sold with the UL listed label, the coated conduit must comply with UL conducted testing.

15.     A UL listing, and the ability to use the "UL Listed" mark on their products are important to manufacturers such as Ocal-Alabama and Robroy-Texas because public authorities frequently require the use of "UL Listed" materials and because architects, builders, and other buyers frequently specify that "UL Listed" products must be used. Plaintiffs are informed and believe that purchasers of PVC-coated rigid metal conduit rely upon the

-3-

EXHIBIT 2

152762.1

existence of the UL listing and the presence of the "UL Listed" mark on the conduit in purchasing conduit.

16.  Robroy-Texas' coated conduit is regularly tested by UL and undergoes a predetermined quality assurance process during manufacturing for compliance with UL 6.

17.  Robroy-Texas' coated conduit also has been tested by outside, independent testing facilities for compliance with UL 6.

18.  Robroy-Texas' conduit has passed all tests for UL 6 compliance at all stages of the manufacturing process and after the manufacturing process is complete.

19.  As late as May 28, 1996, UL informed Robroy-Texas that its coated conduit conformed with UL 6 based on laboratory testing of samples selected by UL.

20.  Robroy-Texas' coated conduit has always passed UL's testing and therefore Robroy-Texas has at all times been entitled to use the UL label.

21.  In March of 1996, Ocal decided to become a publicly traded company and engaged in a successful public offering of its securities.

22.  In April 1996, the President of Ocal, Ilan Bender, requested a meeting with the President of Robroy.

23.  At that meeting, held in Pittsburgh, Pennsylvania on April 19, 1996, Bender stated that:

    (a)  Ocal had cash because of the recent public offering,

    (b)  Ocal wished to purchase the conduit division (Robroy-Texas), and

    (c)  now that he was turning his attention to Ocal Incorporated's coated conduit sales,

-4-

EXHIBIT 2

152762.1

Robroy-Texas would never be worth more money than it was at that time.

24.    Robroy refused to sell Robroy-Texas to Ocal.

25.    On or about May 31, 1996, Ocal sent a letter signed by its President, Ilan Bender, to customers of Robroy-Texas.  That letter, which was on Ocal Incorporated letterhead, stated:

    (a)    Robroy's coated conduit did not comply with UL 6,

    (b)    Ocal-Alabama's coated conduit did comply with these standards,

    (c)    Ocal had conducted tests of Robroy's coated conduit that proved it did not meet UL 6 standards,

    (d)    Robroy was not entitled to use the UL label and use of the label was misleading consumers,

    (e)    asking Customers of Robroy to write to UL demanding that UL take action against Robroy, and

    (f)    suggesting that the recipients should write to Robroy, its distributors, and its sales representatives regarding the alleged failure to comply with UL 6.

A true and correct copy of this letter is attached and incorporated as Exhibit A to this Complaint.

26.    Robroy-Texas later obtained a copy of the testing performed by Ocal.  A review of that testing demonstrated that:

    (a)    the testing was performed by Ocal-Alabama employees at Ocal-Alabama's Mobile, Alabama plant,

-5-

EXHIBIT 2

152762.1

(b)     the testing involved procedures which probably damaged the zinc coating of the pipe by using improper procedures in removing the PVC coating prior to testing, and

(c)     the tests did not use other available procedures to check the accuracy of the conclusions reached.

A true and correct copy of the narrative portion of that testing is incorporated as Exhibit B to this Complaint.

27.    As a result of the flawed procedures, the tests performed by Ocal-Alabama are invalid and Ocal and Ocal-Alabama should have known they were invalid.

28.    The letter circulated by Ocal contains false and misleading statements  of fact and comparisons as follows:

(a)     the letter falsely states that Robroy's coated conduit is not entitled to use the UL 6 label;

(b)     the letter falsely states that Robroy's coated conduit does not comply with the UL 6 standards; and

(c)     the letter falsely implies that Robroy has somehow invalidity obtained its UL listing.

29.    On information and belief, Ocal also has contacted UL and made the same false accusations as were made in the letter sent to customers.

30.    As a result of the letters sent to customers and UL, Robroy and Robroy-Texas have been harmed in the following particulars:

(a)     their reputation for excellent quality has been damaged;

(b)     as a result of numerous inquiries from sales representatives, distributors,

-6-

                    EXHIBIT 2

152762.1

contractors, specifiers, and end users, Robroy-Texas and Robroy have been forced to spend time and money refuting the false statements made by Ocal; and

(c)    Robroy-Texas has been required to have independent testing facilities verify its own and UL test results.

31.    On information and belief, several of Robroy-Texas' customers have written to UL inquiring as to the quality of Robroy-Texas' conduit and demanding testing thereby damaging Robroy-Texas' reputation with UL

## COUNT I
### (Violation of the Lanham Act § 43(a))

32.    The averments of paragraphs 1-25 of the Complaint are incorporated by reference.

33.    Ocal and Ocal-Alabama by distributing the letter attached as Exhibit A to this Complaint have made false statements of fact about Robroy-Texas' goods and both Plaintiffs' commercial activities.

34.    These false statements have deceived Robroy-Texas' customers as evidenced by the numerous inquiries to Robroy and Robroy-Texas and the letters sent to UL

35.    The false allegations made regarding Robroy-Texas' coated conduit are material and likely to influence the purchasing decisions of Robroy-Texas' customers.

36.    The false statements were made in connection with coated conduit which is sold in interstate commerce.

-7-

EXHIBIT 2

152762.1

37.    As a result of the false statements, Robroy and Robroy-Texas have been harmed as set forth in paragraph 23 of the Complaint and Robroy-Texas is likely to lose sales.

38.    Ocal and Ocal-Alabama have taken these acts in bad faith and without any legal justification. Ocal and Ocal-Alabama either knew or should have known that the test results were invalid. As a result of these unusual circumstances, Robroy and Robroy-Texas are entitled to an award of attorney's fees.

WHEREFORE, Robroy and Robroy-Texas pray that the Court

(a)    grant a preliminary and thereafter a permanent injunction ordering Ocal and Ocal-Alabama to

1.    cease and desist all such false advertising;

2.    send correction letters to all recipients and UL setting forth the falsity of the prior letter; and

3.    be enjoined from disseminating any false or misleading statements regarding Robroy or its products in the future.

(b)    award compensatory damages trebled,

(c)    award costs and attorney's fees, and

(d)    award any other relief deemed just and proper by the court.

EXHIBIT 2

152762.1

## COUNT II
### (Trade Defamation)

39.   The averments of paragraphs 1-38 are incorporated by reference.

40.   The facts set forth in the letter published and circulated by defendants (Exhibit A) are false and misleading.

41.   As of the time of the publication, defendants knew or should have known there was no basis in fact for the statements.

42.   The false statements were published willfully or with reckless disregard of the truth.

43.   The false statements were published with specific intent to harm the reputations and business of plaintiffs and, in light of the wish to purchase the conduit division, to drive down the value of the business.

44.   The intentional publication was done with malice, ill will and without legal justification.

45.   Defendants knew the false statements would harm plaintiffs' reputations and the intended recipients understood the defamatory nature of the false statements.

46.   As a result of the publication of the false statements, defendants have been harmed as set forth in paragraph 23 of the Complaint.

WHEREFORE, Robroy and Robroy-Texas pray that the Court

    (a)    grant a preliminary and thereafter a permanent injunction ordering Ocal and Ocal-Alabama to

        1.    cease and desist all such false advertising,

-9-

EXHIBIT 2

2.  send correction letters to all recipients and UL setting forth the falsity of the prior letter, and

3.  be enjoined from disseminating any false or misleading statements regarding Robroy or its products in the future,

(b)  award compensatory damages;

(c)  award punitive damages; and

(d)  award any other relief deemed just and proper by the court.

A jury is DEMANDED.

Respectfully submitted,

David L. Hitchcock
State Bar No 09724500

RICHARDS, MEDLOCK & ANDREWS
1201 Elm Street
4500 Renaissance Tower
Dallas, Texas  75270
(214) 939-4500
FAX (214) 939-4600

Larry K. Elliott, Esq.
COHEN & GRIGSBY, P.C.
2900  CNG Tower
625 Liberty Avenue
Pittsburgh, PA  15219
(412) 394-4900
FAX (412) 391-3382

-10-

EXHIBIT 2

Exhibit A

EXHIBIT 2



# OCAL INCORPORATED

**HEADQUARTERS:**
**14538 KESWICK STREET • VAN NUYS, CALIFORNIA 91405**
**TEL. (818) 782-0711**

May 31, 1996

TO PVC-COATED METAL CONDUIT USERS

Re:  Compliance With UL6 Requirements

Dear Conduit User:

As you will likely soon hear, Ocal, Inc. believes that PVC-coated rigid metal conduit marketed and sold by Robroy Industries, Inc. and Robroy Industries-Texas, Inc. (collectively "Robroy") with an Underwriters Laboratories ("UL") label in fact does not comply with UL specifications. Ocal has taken certain actions based on that belief. This letter will explain Ocal's position and the actions it has taken to bring this matter to the attention of the proper authorities.

Ocal, which is a competitor of Robroy, recently conducted tests under the supervision of an independent testing laboratory in order to determine whether the two companies' PVC-coated rigid metal conduit satisfied the zinc coating test of Standard for

- 41 -

EXHIBIT 2

To PVC-Coated Metal Conduit Users
May 31, 1996
Page 2

Safety Rigid Metal Conduit-UL6.  That testing confirmed that all

ten Ocal samples tested complied with the zinc coating test of

UL6.  By contrast, that testing indicated that 32 of the 36

Robroy samples (approximately 88%) failed to comply with the zinc

coating test of UL6.  Copies of the inspection reports are

included with this letter.  Ocal believes that Robroy has begun

grinding its galvanized pipe prior to applying the PVC coating in

order to improve the bond between the coating and the pipe.  Ocal

believes that this grinding process may be a primary or the sole

cause of Robroy's high failure rate with respect to the zinc

coating test of UL6.

    Ocal believes that Robroy's use of the UL label on PVC-

coated rigid metal conduit which does not pass the zinc coating

test of UL6 is inappropriate and misleading to the consumer.

Ocal has therefore reported this matter to UL by letter dated May

31, 1996, and asked UL to take appropriate action including, if

deemed appropriate by UL, demanding that Robroy (1) discontinue

manufacturing or shipping PVC-coated rigid metal conduit bearing

EXHIBIT 2

To PVC-Coated Metal Conduit Users
May 31, 1996
Page 3

the UL label without first establishing that the conduit

satisfies the zinc coating test of UL6, (2) remove the UL label

from all non-conforming conduit in its inventory, including

consigned inventory, and (3) recall all conduit previously

shipped with the UL label which fails to comply with the zinc

coating test of UL6.   (A copy of our May 31, 1996, letter to UL

is available on request.)


In addition, Ocal has filed a lawsuit in California against

Robroy asserting that Robroy is engaged in false advertising

which is misleading to PVC-coated rigid metal conduit users.


If you are concerned about the appropriateness of the UL

label on Robroy's PVC-coated rigid metal conduit, we suggest that

you raise those concerns with UL.   For your convenience, we have

enclosed a form letter which you may wish to send to UL.   You may

also wish to voice your concerns directly to Robroy, its

distributors, and its sales representatives.

EXHIBIT 2

To PVC-Coated Metal Conduit Users
May 31, 1996
Page 4

Sincerely yours,

Ilan Bender
President
Ocal, Inc.

EXHIBIT 2

Exhibit B

EXHIBIT 2

TEL NO:                          #572 P02



received
6/10/9 4



**LIBERTY**
**TECHNOLOGIES, INC.**

*Liberty Technical Services*

May 7, 1996

Ocal
P.O. Box 1844
Mobile, AL 36601

Attention: Ms. Joyce Murphy

RE: LTS JOB #587 10
P.O. #
Chrome Sulfate Inspection of Rob Roy and
Ocal Conduit
Date of Inspec ion: 5/2/96

Dear Ms. Murphy:

For informational purposes, *Liberty Technical Services* has performed n ndestructive testing on your Rob Roy and Ocal Conduit as directed by you for Ocal. The result of this test i included in the following report. This report should be evaluated by Ocal or other competent engineering perso nel for any subsequent action that may be appropriate.

If you should have any questions, please call our Mobile office. As always, I has been a pleasure to serve you and Ocal and we look forward to serving you in the near future.

Sincerely,

Robert Kulhanek/s

Robert Kulhane k
Mobile Division

RK:cam
Attachments

4930 Tufts Road, Mobile, AL 36619 • Phone: (334) 602-0442 • Fax: (3 )4) 602-0543

EXHIBIT 2

## ROB ROY RED VS OCAL BLUE

RECEIVED (4) DIFFERENT BUNDLES OF (4) EACH ROB ROY PIPE FROM VARIOUS PLACES TO OUR LAB.  SHIPPING DOCUMENTS AVAILABLE UPON REQUEST.

ALL TESTS WERE PERFORMED BY OCAL PERSONNEL ACCORDING TO SPECIFICATIONS OF UL 6.

ALL TESTS WERE OBSERVED BY MYSELF TO BE IN ACCORDANCE WITH UL 6.

**ROBERT KULHANEK**
**PROJECT MANAGER / SENIOR TECHNICIAN**



- 47 -                                    EXHIBIT 2

JUN-05-'96 WED 13:13 ID:                    TEL NO:                    #572 P04

### ROB ROY RED VS OCAL BLUE
### 5/1/96

3:45 pm - TRANSPORTED (4) BUNDLES OF (4) EACH - ROB ROY CONDUIT
FROM OFFICE TO OCAL, INC.

4:15 pm - UNLOADED (4) BUNDLES OF (4) EACH ROB ROY PIPE;
............................ AND CENTER CUT SAMPLE OF BUNDLES

.................... (8) SAMPLES  (4-3/4" AND 4-1")
    PHEONIX, ARIZONA - (8) SAMPLES  4-3/4" AND 4-1")
    PITTSBURGH, PENNSYLVANIA - (8) SAMPLES  (4-3/4" AND 4-1")
    PORTLAND, OREGON - (8 SAMPLES)  (4-3/4" AND 4-1")

4:55 pm - CUTTING OF ROB ROY PIPE COMPLETED.  ALL SAMPLES
LABELED.

5:00 pm - RANDOMLY SELECTED (2) PIECES OF 1" CONDUIT AND (2)
PIECES OF 3/4" CONDUIT FROM OCAL (MOBILE, ALABAMA) WAREHOUSE.
WITNESSED END SAMPLE CUTS AND CENTER SAMPLE CUTS FROM ALL
PIECES.  (8) SAMPLES TOTAL.

5:10 pm - WITNESSED AS ALL SAMPLES (40 TOTAL) WERE PUT INTO A
BUCKET WHICH WAS THAN FILLED WITH METHYLENE CHLORIDE
SOLUTION TO DISSOLVE COATING.

5:15 pm - ROOM LOCKED WITH PERSONAL PADLOCK TO INSURE NO
ENTRY UNTIL MY RETURN ON 5/2/96.



EXHIBIT 2

## ROB ROY RED VS OCAL BLUE
### 5/2/96

1:30 pm - ARRIVED AT OCAL, INC. MOBILE FACILITY.  REMOVED PADLOCK FROM DOOR AND REMOVED FIRST SAMPLES FROM SOLUTION.  OCAL BLUE HAD A SHINY APPEARANCE.  ALL COATING REMOVED.  THE ROB ~~ROY RED SAMPLES (ARIZONA BATCH) HAD~~ A BLACK APPEARANCE.  THE ~~_____ AND~~ NOT COMPLETELY DISSOLVED FROM ~~_____~~

2:05 pm - EXAMINED CuSO4 DOCUMENTATION (ATTACHED).  WITNESSED BOTTLE BEING OPENED AND POURED INTO PYREX CONTAINERS FOR TEST.  175 ML OF SOLUTION.  PHOENIX, ARIZONA SAMPLES TESTED FIRST.  SEE DOCUMENTATION.

3:30 pm - TEST COMPLETED ON ROB ROY - PHOENIX, ARIZONA SAMPLES AND OCAL - MOBILE, ALABAMA SAMPLES.  OCAL SAMPLES PASS WITH (1) 1" CENTER SAMPLE BEING TAKEN TO DIP (10) TO BE COMPARABLE TO PHOENIX, ARIZONA SAMPLE.  (1) 3/4" END (SAMPLE #12 ROB ROY) TAKEN TO DIP #8.  SOME TYPE OF COATING BELIEVED TO BE INHIBITING TEST ON 3/4" PIPE.

3:35 pm - WITNESSED CLEANING OF ROB ROY - PITTSBURGH, PENNSYLVANIA SAMPLES.  PITTSBURGH SAMPLES CLEANED WITH EMERY CLOTH INSTEAD OF WIRE BRUSHING.

3:50 pm - TESTING OF ROB ROY PITTSBURGH, PENNSYLVANIA SAMPLES BEGINS - SEE DOCUMENTATION.

4:30 pm - PITTSBURGH, PENNSYLVANIA SAMPLES TESTING COMPLETED.

4:35 pm - WITNESSED CLEANING OF PORTLAND, OREGON AND CLEVELAND, TENNESSEE SAMPLES.  EMERY CLOTH CLEANED.

5:05 pm - TESTING OF PORTLAND, OREGON AND CLEVELAND, TENNESSEE SAMPLES BEGINS.

6:20 pm - TESTING COMPLETE OF PORTLAND, OREGON AND CLEVELAND, TENNESSEE SAMPLES.

RESULTS:
  OCAL BLUE HAD (6) SAMPLES TESTED.  (6) WERE ACCEPTED.
  ROB ROY RED HAD (32) SAMPLES TESTED.  (2) WERE ACCEPTED.  (28) WERE REJECTED AND (2) WERE BORDERLINE.
  TWO ROB ROY RED SAMPLES WERE BORDERLINE AT 4% AND 5%.



LIBERTY
TECHNOLOGIES, INC.
Liberty Technical Services

EXHIBIT 2