# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ROBROY INDUSTRIES – TEXAS, LLC, a Texas corporation, and ROBROY INDUSTRIES, INC., a Pennsylvania corporation § § § § § *Plaintiffs*, § § v. § § THOMAS & BETTS CORPORATION, a Tennessee corporation, § § § *Defendant*. § | Case No. 2:15-CV-512-WCB |

## MEMORANDUM AND ORDER

Before the Court are the parties' Joint Motion for an Enlarged Schedule and Status Conference, Dkt. No. 36, and the Plaintiffs' Opposed Motion to Compel, For a Status Conference, and to Hold the Schedule in Abeyance, Dkt. No. 39. The joint motion for an enlarged schedule and status conference has already been GRANTED. Plaintiffs' motion to compel, for a status conference, and to hold the schedule in abeyance is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

The plaintiffs in this case are two related entities, Robroy Industries—Texas, LLC, and Robroy Industries, Inc., (collectively, "Robroy"). The defendant, Thomas & Betts Corporation ("T&B"), is a competitor of Robroy. Both manufacture PVC-coated steel tubing that is used as conduits for electrical wires. Robroy's suit alleges a violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as trade defamation and unfair competition.

In October, the parties filed their joint motion for an enlarged schedule and a status conference, contending that discovery disputes between the parties had consumed much of the time allotted for fact discovery in this case. Although they stated that they were working to resolve their disputes, they requested that the court modify the schedule for discovery and later proceedings in this case because of the time consumed by the discovery disputes and because of other scheduling difficulties.

Before the court had acted on that motion, the plaintiffs, on December 7, 2015, filed their opposed motion to compel, for a status conference, and to hold the schedule in abeyance. Briefing of that motion was completed on December 30, 2015. A telephonic hearing was held on January 8, 2016, on those two outstanding motions as well as other pending motions in this case.

In the course of the hearing, the Court ruled on the defendant's Motion to Transfer Venue Under 28 U.S.C. § 1404 or to Stay, Dkt. No. 8, as well as the parties' motions for leave to file certain materials under seal, Dkt. Nos. 44 and 45. The Court previously entered an order setting forth in more detail the reasoning behind its ruling on the motion to transfer or stay, Dkt. No. 48. Along with the present order, the Court is entering orders addressing in more detail the reasons for the Court's oral ruling on the motions to seal.

As to the October motion for an enlarged schedule and a status conference, the Court has granted that motion by conducting the January 8, 2016, telephonic status conference and hearing, and by entering an Amended Docket Control Order on January 13, 2016. Dkt. No. 49 During the conference, the Court denied the plaintiffs' request to hold the schedule in abeyance, but indicated that it would issue a new Docket Control Order with later deadlines for the completion of discovery and other steps in the proceeding. Because all other pending matters are

therefore disposed of, this Memorandum and Order addresses only the plaintiffs' motion to compel discovery.

In the December 7, 2015, motion, Robroy sought a number of forms of relief: It sought an order compelling the production of documents in the control of alleged agents of T&B ("agent documents"); it requested that the Court appoint a forensic document collector to conduct the document production for T&B; it sought compensation for two depositions that were kept open because of the late production of documents; and it sought compensation for the extra costs associated with two unprepared witnesses that T&B designated to testify pursuant to Fed. R. Civ. P. 30(b)(6).

During the January 8, 2016, hearing, the Court denied Robroy's requests for relief in several respects. First, the Court denied Robroy's request for an order directing alleged agents of T&B to produce documents. The Court ruled that Robroy had not made a satisfactory showing, based on the status of the alleged agents, that the documents were in T&B's possession, custody, or control. Second, the Court also denied Robroy's request for the appointment of a forensic document collector at T&B's expense. Again, the Court found that a sufficient showing had not been made to justify that form of relief. Third, the Court denied Robroy's request for an order directing the payment of compensation to Robroy for the delay in the production of documents. The Court was not persuaded that the allegedly belated production was a violation of T&B's discovery obligations sufficient to justify a monetary award. The Court takes note that, during the hearing, the parties agreed on the general outlines for document production going forward. The Court is of the view that, at least for the future, that agreement will resolve the portion of the motion to compel that complains of the production of documents on the eve of deposition.

The sole remaining issue is Robroy's request for compensation for the costs associated with the lack of preparation of witnesses who were designated to testify for T&B pursuant to Fed. R. Civ. P. 30(b)(6).

**DISCUSSION**

Because a corporation or other organization is unable to give testimony in its own right, it must designate others to provide testimony on its behalf. After an organization designates persons to testify on its behalf, "[t]he persons designated must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). "[T]he deponent 'must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to *prepare* those persons in order that they can answer fully, completely, and unevasively, the questions posed . . . as to the relevant subject matters.'" Brazos River Authority v. GE Ionics, Inc., 469 F.3d 416, 433 (5th Cir. 2006) (quoting Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 151 (S.D.N.Y. 1997) (alterations in Fifth Circuit opinion)). The duty to prepare "goes beyond matters personally known to that designee or to matters in which that designee was personally involved." Id. (quoting United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996)).

If a corporation fails to designate a witness with sufficient knowledge of the relevant facts, "then the appearance is, for all practical purposes, no appearance at all." Resolution Trust Corp. v. S. Union Co., 985 F.2d 196, 197 (5th Cir. 1993). A district court faced with an unprepared 30(b)(6) designee is empowered to use any of the remedies available under Rule Fed. R. Civ. P. 37(d) for a party's failure to attend its own deposition. Id. at 198.

Robroy contends that one of T&B's Rule 30(b)(6) designees, Bogdan Diaconescu, was unprepared to give knowledgeable testimony on all of the topics that he was designated for. Mr. Diaconescu was designated to testify on 29 topics. See Dkt. No. 39. The parties provided a joint

submission of the topics on which Mr. Diaconsecu was designated to provide testimony. Dkt. No. 50. After reviewing the parties' submissions in light of the topics on which Mr. Diaconescu was designated to testify, the Court finds that his testimony was insufficient on the first two topics on the list of topics for which he was designated. The first topic was "[t]he administration and maintenance of Thomas & Betts' computer systems between January 1, 2007, and the present." The second topic was:

> Thomas & Betts' efforts to preserve, identify, retain, search, collect, and produce Documents in connection with this litigation, including, but not limited to, the following:
>
> a. processes and methods employed and the timeframe of all such efforts;
>
> b. persons involved, and for each such person, the nature and timeframe of his or her involvement;
>
> c. indices, logs, databases, servers, workstations, networks, devices, computers, records, backup systems and other file storage locations identified or searched;
>
> d. the development, administration, interpretation, and enforcement of Thomas & Betts' record retention policy;
>
> e. policies and practices relating to the usage of home computers or personal electronic devices (including but not limited to personal cell phones, iPads, tablets, or laptops) for business purposes, and all persons responsible and/or authorized to administer, interpret, and enforce such policies;
>
> f. methods and process used in backing up electronically stored Documents between January 1, 2007, and the present;
>
> g. Communications with employees regarding their obligation to preserve and collect Documents in connection with this litigation, and all persons involved in such Communications;
>
> h. Communications with third-party Ocal distributors regarding the preservation and collection of Documents in connection with this litigation, and all persons involved in such Communications;

> i. Documents that were (or may have been) destroyed upon Thomas & Betts' reasonable anticipation of this litigation; and
>
> j. Documents that were (or may have been) deleted in violation of Thomas & Betts' records retention policy or Thomas & Betts' general legal duty to preserve evidence in connection with this litigation.

Reviewing Mr. Diaconescu's testimony in light of those topics, deficiencies are apparent. Mr. Diaconescu was asked questions that fell within the first topic or the individual sub-topics of the second. In each case, he failed to provide any a response that could reasonably be considered to represent "information known or reasonably available to" T&B. Fed. R. Civ. P. 30(b)(6). The following four excerpts are examples of his lack of knowledge on the designated topics. When asked about the company e-mail system, Mr. Diaconescu testified as follows:

> Q. Was there a different e-mail program that was used prior to the acquisition by ABB?
>
> A. I believe it was.
>
> Q. And what program was that?
>
> A. I think we were using Google Drive at that time. So Google Mail may have been what we were using at the time.
>
> Q. And were e-mails that had been Google Mail, were they moved over to the current platform?
>
> A. I don't think so. I don't think so. The—if I recall correctly, when the migration took place, there was a transition period after which, basically we started from scratch.
>
> Q. I understand, sir, that you're testifying here on the basis of your personal belief. Is there someone who would have been able to tell me, definitively, what happened?
>
> A. Certainly someone in the IT department, sure.
>
> Q. You can't tell me—
>
> A. No. No.

When asked about how the company intranet site works, he testified as follows:

> Q. Do you know whether the intranet site preserves prior versions of content that was posted?

>A. I do not know that. I don't think so, but I do not know that.
>
>Q. Or whether the IT department keeps a record of modifications to the intranet site?
>
>A. You'll have to ask them that.
>
>Q. Do you know which systems within the company are backed up?
>
>A. I do not know.
>
>Q. And so would it be fair to say you also don't know what programs might be used to back up any systems?
>
>A. That's a fair statement. I don't know.
>
>Q. And I should direct those questions to the IT department?
>
>A. Correct.

On the question of how the company stored and backed up e-mails, he testified:

>Q. Are users' e-mail files stored on a central server, or would they be stored locally on individual's computer?
>
>A. Can you repeat the first part of the question?
>
>Q. Would e-mail files, would that be stored centrally, such as on a server, or stored in some other manner, such as locally on an individual's computer?
>
>A. Well, obviously, everybody would have storage of their own e-mails, and I assume—or I presume, rather, that they are backed up to a central location also for the company's records. I presume.
>
>Q. But if I wanted a definitive answer to that question, would you talk to the IT department?
>
>A. Absolutely, yes.

He was also asked about how the company used and stored instant messages sent between employees:

>Q. Does the company maintain or use an instant messaging program?
>
>A. We do have one, yeah. I believe it's LinkedIn—not LinkedIn, the site, but LinkedIn in terms of instant messaging, yes.
>
>Q. Is that something that's used in connection with the Ocal business?

> A. It would not be specific to that.
>
> Q. Does—do all employees have access to this instant messaging program?
>
> A. To my knowledge, yes.
>
> Q. Do you know if any logs are maintained they relate to the instant messaging?
>
> A. I do not know that.
>
> Q. And whether records of instant messages are maintained, is that best directed to the IT department?
>
> A. Yes. Absolutely.

These excerpts are merely exemplary. Based on the quoted excerpts as well as other similar instances in the course of Mr. Diaconescu's testimony, the Court concludes that he was unprepared to serve as a Rule 30(b)(6) designee on the first and second topics. T&B argued at the hearing that Mr. Diaconescu's lack of knowledge regarding several of the areas of inquiry was explained by the fact that the questioning was more "granular" than had been expected. The problem with that argument is that the topics for which Mr. Diaconescu was designated—and the second topic in particular—were quite detailed, and Mr. Diaconescu's protestations of ignorance were, in several instances, in response to questions that were based directly on the designated topics.

With that said, it must be noted that the prejudice to Robroy has been mitigated by T&B's actions following Mr. Diaconescu's deposition. T&B agreed to produce three additional witnesses to cover topics for which Mr. Diaconescu was originally designated: an employee from T&B's IT department to testify on topic 1, a document custodian to testify to topic 2, and a knowledgeable individual, Gretchen Boyer, to testify on topic 30 (dealing with T&B's efforts to recall certain marketing materials after the filing of the present lawsuit). The Court also notes that Mr. Diaconescu was able to testify sufficiently on 27 of the 29 topics that he was designated for, and that this is the first time that the Court has had to intervene in a discovery dispute in this

case. Finally, the Court's criticism of Mr. Diaconescu's testimony is tempered to some extent by the fact that he appears to have been very cautious about overstating his knowledge on particular matters. While such caution is normally an admirable trait for a witness who is called upon to testify as to his personal knowledge of a matter, it is not helpful when the witness is called upon to testify as to the corporation's knowledge of matters for which there are clearly facts within the corporation's collective knowledge.[1]

In sum, the Court concludes that Mr. Diaconescu was not adequately prepared to testify as a Rule 30(b)(6) witness on two of the topics for which he was designated. In light of all the circumstances, the Court is not persuaded that a monetary award of the sort requested by Robroy would be appropriate relief. Nonetheless, Mr. Diaconescu's lack of preparation has required Robroy to undergo the additional time and expense of deposing two additional witnesses to cover the topics on which Mr. Diaconsecu could not testify knowledgably. Because of the added inconvenience to Robroy, the Court is persuaded that Robroy is entitled to some measure of relief due to Mr. Diaconescu's lack of preparation. In the Court's view, the most appropriate remedy is to provide that the depositions of the Information Technology and document custodian 30(b)(6) designees be held at a location of Robroy's choosing rather than requiring Robroy to absorb the additional cost of travel to a location inconvenient to Robroy to conduct those depositions. A similar remedy has been employed previously in analogous circumstances, and it appears to be the most appropriate remedy here. See Nester v. Textron, No. A-13-CA-920-LY, 2015 WL 1020673, at *13-14 (W.D. Tex. Mar. 9, 2015).[2]

---

[1] Robroy argued in its motion that one other T&B's designee was unprepared to testify as a Rule 30(b)(6) witness. After reviewing the parties' submissions, however, the Court concludes that only Mr. Diaconsecu was unprepared for his designated topics.

[2] The remedy ordered by the Court does not apply to the deposition of Gretchen Boyer.

Therefore, the Court ORDERS the 30(b)(6) depositions of the Information Technology witness and the document custodian be held at a reasonable location convenient to the plaintiffs and/or their counsel.

IT IS SO ORDERED.

SIGNED this 27th day of January, 2016.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE