IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROBROY INDUSTRIES – TEXAS, LLC, a Texas corporation, and ROBROY INDUSTRIES, INC., a Pennsylvania corporation,<br><br>*Plaintiffs*,<br><br>v.<br><br>THOMAS & BETTS CORPORATION, a Tennessee corporation,<br><br>*Defendant*. | § § § § § § § § § § § § § | Case No. 2:15-CV-512-WCB |
| THOMAS & BETTS CORPORATION, a Tennessee corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>ROBROY INDUSTRIES – TEXAS, LLC, a Texas corporation, and ROBROY INDUSTRIES, INC., a Pennsylvania corporation,<br><br>*Defendants*. | § § § § § § § § § § § § § § | Case No. 2:16-CV-198-WCB |

**MEMORANDUM OPIONION AND ORDER**

Before the Court is <u>Plaintiffs' Motion for Protective Order Pursuant to Rule 26(c)(1)</u> filed by plaintiffs Robroy Industries—Texas, LLC, and Robroy Industries, Inc. ("Robroy"). Dkt. No. 105. Robroy requests that the Court bar defendant Thomas & Betts Corporation (T&B) from

1

obtaining discovery related to marketing services that Acadia Lead Management Services, Inc., ("Acadia") provided to Robroy.[1] Robroy's motion is DENIED.

**BACKGROUND**

Acadia is a market research firm that has provided services to Robroy since 2011. Those services include identifying potential attendees for Robroy's "Lunch & Learn" program, which consist of sessions held at Robroy's facilities for customers and engineers to earn professional development hours. Acadia gives presentations at these Lunch & Learns, and it seeks to generate interest among attendees in Robroy's accredited "Corrosion College" program. Acadia also provides annual reports to Robroy about the performance of those programs. In addition to the Corrosion College and Lunch & Learn services, Acadia conducts customer satisfaction surveys for Robroy. Dkt. No. 113-1.

On December 21, 2016, T&B deposed Stephanie Ellis, the Marketing Manager of Robroy Industries, Inc.'s Conduit Division, the Director of Corrosion College, and an instructor at Corrosion College and the Lunch & Learns. Dkt. No. 113-1. T&B asked questions about her role as Director of Corrosion College, about Acadia's marketing services, and about Acadia's communications with customers and potential customers. See Dkt. No. 105-6 (Ellis Deposition Tr., Dec. 21, 2016). On December 27, 2016, T&B sent a letter to Robroy requesting the production of documents on topics related to Ms. Ellis's testimony, including customer surveys created by Acadia, trifolds and fliers created for the Lunch & Learns, and emails with customers

---

[1] Robroy originally moved for a protective order to prevent T&B from obtaining this type of discovery not only from Robroy, but also from Acadia via a third-party subpoena that T&B served on Acadia on December 20, 2016. Dkt. No. 105-1. However, Acadia and T&B have reached an agreement regarding Acadia's production to T&B of documentation and a witness for deposition. See Dkt. No. 113-6. Robroy and T&B agree that Robroy's motion for a protective order regarding the third-party subpoena is moot. Dkt. No. 113, at 4; Dkt. No. 117, at 5.

regarding reasons for purchasing PVC-coated conduit from particular manufacturers. Robroy agreed to produce the documents called for in those requests.[2]

In its letter, T&B also requested four other categories of materials, Dkt. No. 105-9:

- Corrosion College presentations. Ms. Ellis testified that she showed presentations at Corrosion College 10 to 12 times a year. Thomas & Betts requests all versions of the presentations given at Corrosion College from 2007 to the present.

- Video of the Lunch and Learns. Ms. Ellis testified that she had an exemplary video of a Lunch and Learn that was formally [sic] available on Vimeo or YouTube. Thomas & Betts requests all versions of this video.

- USB at Lunch and Learns. Ms. Ellis testified that she often gave attendees materials at Lunch and Learns on a USB drive. Thomas & Betts requests production of all the materials included on those USB drives.

- Acadia end of year presentations. Ms. Ellis testified that Acadia presented an end of year powerpoint to Robroy every year. Thomas & Betts requests productions [sic] of all of these Acadia presentations.

In a response sent on January 6, 2017, Robroy refused to produce any of the materials called for in those four requests. Dkt. No. 105-11.

**DISCUSSION**

Rule 26(c)(1) provides in pertinent part:

*In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery[.]

---

[2] In particular, Robroy stated that it would produce the surveys; that it had already produced the Lunch & Learn trifolds and fliers; and that it would make a reasonable effort to locate any emails with customers, although it added that it might be unable to locate the emails. Dkt. No. 105-11, at 1.

Robroy's challenge to T&B's requests for production appears premature, particularly given the Rule's requirement that the "movant has . . . conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c); cf. Fed. R. Civ. P. 37(a)(1) (same requirement for motions to compel). The Court is unaware of any response by T&B accepting or rejecting Robroy's proposed terms of production in its letter of January 6, 2017, and in fact Robroy filed the present motion for a protective order on the same day that it sent its letter responding to T&B's discovery request. However, in light of the approaching close of discovery, the Court will address the motion for a protective order on the merits, even though it appears that the Court has been called upon to intercede before the parties have completed the process of negotiating a resolution to their discovery dispute.

Under the "good cause" standard set forth in Rule 26(c), a movant who seeks the court's protection against a discovery request that it claims would result in "undue burden or expense" must make a showing of "some plainly adequate reason therefore." 8A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2035 (3d ed. 2008). That showing "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998). Robroy has not satisfied this standard.

1. To begin with, the Court finds no merit in Robroy's arguments that T&B's requests are untimely, or that they are unduly burdensome under the good cause standard of Fed. R. Civ. P. 26(c). T&B's requests are not untimely because fact discovery has not yet closed. See Raytheon Co. v. Indigo Sys. Corp., No. 4:07-cv-109, 2008 WL 2509367, at *1 (E.D. Tex. June 23, 2008) (denying motion to quash third party subpoenas issued June 11 and June 18, 2008,

even though that meant that 39 depositions were scheduled for the week of June 23-27, 2008, when fact discovery closed on July 1, 2008).

2. As for the alleged burden of the request for production, Robroy characterizes T&B's requests as "a small subset of Acadia and Corrosion College related information." Dkt. No. 105, at 11. From the face of T&B's letter to Robroy, T&B's specific requests appear to fit that characterization. Dkt. No. 105-9. All four of the disputed categories of requested materials are quite limited and very specific. Documents responsive to those requests, if they exist, should not be difficult to locate and produce. Therefore, there is nothing on the face of the requests that supports Robroy's contention that the requests will "force Robroy to incur significant legal expenses and other costs to collect, review, and produce the information requested of it." Dkt. No. 105, at 9.

Beyond that, the Court is skeptical of Robroy's claim because Robroy has failed to submit any evidence to support its assertion that the document requests will impose an undue burden on it. In the absence of some evidentiary showing that a discovery request would be burdensome, it is appropriate for a court to reject a request for a protective order on the ground that the undue burden claim is conclusory. See McLeod, Alexander, Powel & Apfell, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990) (no abuse of discretion to deny a protective order where objections—i.e., that the requests were overbroad and unduly burdensome—were merely conclusory); see also In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (abuse of discretion to enter protective order when movant did not submit affidavits or other evidence in support of its assertions, because "particular and specific demonstration[s] of fact" are required).

3. The Court also does not find Robroy's challenge based on lack of relevance to be persuasive. Robroy contends that while T&B's marketing activities are relevant to Robroy's

5

false advertising claims, Robroy's marketing activities are not. Dkt. No. 105, at 2. As pointed out by T&B, however, Robroy's marketing efforts through Acadia may bear on the issues of causation and damages, as revealed by the interactions that Acadia and Robroy had with customers and potential customers. See Dkt. No. 111, at 8.

For example, Robroy alleges that T&B's false statements to customers regarding Robroy's UL listing caused customers to reject Robroy for particular projects.[3] The Corrosion College and Lunch & Learn presentations, however, may reveal Robroy's focus on factors other than the UL listings that it believes are determinative of customer choices. The Lunch & Learn video may also show Robroy's focus, and possibly customer concerns stated during the session. The Acadia presentations to Robroy may provide similar evidence. See Dkt. No. 117-2, at 7; Dkt. No. 117-4, at 11; Dkt. No. 117-1 (relevant customer concerns in consumer survey). Indeed, Robroy contends that the Acadia presentations "relate to Robroy's sales strategy and efforts to schedule Lunch & Learns." Dkt. No. 105-11, at 2. While Robroy's sales strategy may be entitled to protection under the governing Protective Order, Dkt. Nos. 29, 59, the sensitive nature of that material does not mean it is irrelevant and not discoverable.

T&B has also argued that the requested information may bear on the issue of damages by showing that Robroy has not expended resources to "correct" T&B's false statements in these interactions with customers. Dkt. No. 111, at 8; see also Dkt. No. 1, Complaint ¶¶ 39(b), 45, 54, 61 (Robroy's allegations of harm in the form of corrective statements). In its Reply Memorandum, Robroy avers that it "is not seeking any damages related to its own educational efforts." Dkt. No. 113, at 2. In support of that representation, Robroy cites its damages expert's report, which calculates damages based on losses attributable to specific projects and not to the

---

[3] "UL" refers to Underwriters Laboratories, a safety standards organization. See Dkt. No. 1, Complaint ¶ 9.

costs of correcting false information from T&B. Dkt. No. 113-3. Even though Robroy has expressly disclaimed its pleaded damages as to its educational efforts, the focus of the presentations at the Corrosion College programs and the Lunch & Learns is still relevant, as it may reveal the extent to which Robroy and its potential customers regarded the UL listings as important to customers' purchasing choices.

The Court finds T&B's reasoning sufficient in light of the broad standard for relevance under Fed. R. Civ. P. 26(b)(1) and the liberal construction of the rules to serve the purposes of discovery.[4] Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 218 F.R.D. 125, 132 (E.D. Tex. 2003) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). The Court also finds that Robroy has not made the particularized showing required to satisfy the good cause standard for a protective order under Rule 26(c). In re Terra Int'l, 134 F.3d at 306; McLeod, 894 F.2d at 1485.

The Court therefore DENIES Robroy's motion for a protective order to prevent T&B from obtaining discovery as to these requests.

---

[4] The Court points out that Rule 26 was amended to delete from the definition of relevance information that appears "reasonably calculated to lead to the discovery of admissible evidence" because "[t]he phrase has been used by some, incorrectly, to define the scope of discovery" and "has continued to create problems" given its ability to "swallow any other limitation on the scope of discovery." Fed. R. Civ. P. 26, Advisory Committee Note (2015). It appears that news of the amendment has not spread to all quarters. See Dkt. No. 111, at 6 (including within the definition of relevance "information . . . [that] might reasonably lead to information that bears on any material fact or issue in the action."); Dkt. No. 117, at 3 (arguing that requested discovery "may contain or lead to relevant evidence"). Even so, the relevance standard under the amended Rule 26(b)(1) is sufficiently broad to encompass T&B's requests.

IT IS SO ORDERED.

SIGNED this 23d day of January, 2017.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE