**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ROBROY INDUSTRIES – TEXAS, LLC, a Texas corporation, and ROBROY INDUSTRIES, INC., a Pennsylvania corporation, | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Case No. 2:15-CV-512-WCB |
| THOMAS & BETTS CORPORATION, a Tennessee corporation, | § § § | |
| *Defendant*. | § | |

| | | |
|---|---|---|
| THOMAS & BETTS CORPORATION, a Tennessee corporation, | § § | |
| | § | |
| *Plaintiff*, | § § | |
| | § | |
| v. | § § | |
| | § | |
| ROBROY INDUSTRIES – TEXAS, LLC, a Texas corporation, and ROBROY INDUSTRIES, INC., a Pennsylvania corporation, | § § § § § | Case No. 2:16-CV-198-WCB |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are <u>Plaintiffs' Motion to Exclude the Testimony and Report of Ambreen Salters</u>, Dkt. No. 133 ("Robroy's Motion to Exclude"), and <u>Thomas and Betts' Motion to Exclude Opinions of Chase A. Perry Regarding Damages</u>, Dkt. No. 136 ("T&B's Motion to Exclude").  The plaintiffs' motion is GRANTED IN PART and DENIED IN PART.  Thomas & Betts' motion is DENIED.

1

# BACKGROUND

Both the plaintiffs ("Robroy") and the defendant ("T&B") propose to call an expert witness to testify about damages. In addition, T&B's expert witness intends to testify about the absence of a causal link between the allegedly improper conduct of T&B representatives and any losses suffered by Robroy. Both proposed expert witnesses are "professional witnesses," as opposed to "industry witnesses," in that neither has expertise in the industry at issue in this case, and both are associated with consulting groups that offer analysis and expert testimony on economic and financial issues to parties in legal proceedings.

    **1.** Robroy's expert witness, Chase A. Perry, proposes to testify in support of Robroy's claim for damages. He has a law degree and an M.B.A., and he is employed by a consulting group where he has provided economic analysis and testimony in numerous commercial disputes, including unfair competition cases. In his expert report, Mr. Perry explains (1) that he assumes T&B will be held liable for one or more of Robroy's claims; (2) that he does not offer an opinion on the liability issue; and (3) that he addresses only the issue of the damages resulting from T&B's allegedly unlawful acts. Expert Report of Chase A. Perry Regarding Damages, Dkt. No. 136-4, at 3 ("Perry Report"). Based on his analysis of the evidence from T&B, Mr. Perry concludes in his supplemental report that Robroy is due damages in the form of disgorgement of T&B's profits in the amount of no less than $8.1 million, and as much as $22.9 million. Supplemental Expert Report of Chase A. Perry Regarding Damages, Dkt. No. 136-1, at 9 ("Perry Supplemental Report"). In the alternative, he testifies, Robroy is due lost profits damages of no less than $6.6 million and as much as $18.7 million. Perry Supplemental Report, Dkt. No. 136-1, at 10.

Mr. Perry proposes to testify about those projects for which data is available and in which, according to Robroy, T&B won the conduit contract as a result of false statements to customers. He proposes to testify that he derived his estimate of the profits T&B earned on those projects by subtracting the expenses T&B incurred from the dollar value of the sales, and that he derived the profits that Robroy would have earned on those projects by estimating the expenses that Robroy would have incurred and subtracting them from the gross revenue Robroy would have obtained from the projects in question.

T&B has moved to exclude Mr. Perry's testimony for three reasons: (1) because Mr. Perry "presents no reliable link between the alleged false statements" and the projects that he uses to calculate damages, T&B's Motion to Exclude, at 1, 8; (2) because Mr. Perry "relied on speculative and unreliable data to assign an 'estimated minimum and maximum sales value' of potentially lost sales for each . . . project," id. at 11; and (3) because Mr. Perry describes only "speculative and attenuated harm that the statements-at-issue merely enabled T&B to potentially make conduit sales to a customer," id. at 14.

**2.** T&B intends to call Ambreen Salters as an expert witness at trial. She has a background as an economist, with a B.A. in business administration and an M.S. in economics. She is employed by a firm that, among other things, provides expert witnesses in legal proceedings. Like Mr. Perry, she does not purport to be an expert in the electrical conduit industry or any related industry.

From Ms. Salters' report, Rule 26 Expert Report of Ambreen Salters on Behalf of Defendant Thomas & Betts Corporation, Dkt. No. 133-1 ("Salters Report"), it appears that T&B intends to offer Ms. Salters' testimony for several purposes: (1) to show that Robroy has not established a causal nexus between the defendants' allegedly wrongful conduct and the resulting

harm to Robroy, id. at ¶¶ 41-44; (2) to testify as to the considerations that influence purchasing decisions by customers of PVC-coated conduit, id. at ¶¶ 45-57; (3) to establish that customers can readily verify whether a particular product complies with applicable standards for PVC-coated conduit, id. at ¶¶ 58-60; and (4) to respond to Robroy's evidence regarding damages, id. at ¶¶ 61-82. The first three categories all go to the question whether the alleged false statements made by T&B caused actionable injury to Robroy.[1] The Court will therefore deal with those portions of Ms. Salters' testimony collectively under the rubric of "causation."

Robroy has moved to exclude Ms. Salters' testimony on the ground that her opinion testimony and report "are based on unreliable principles and methodology [and] would not be helpful to the jury." In its motion to exclude, Robroy argues: (1) Ms. Salters' conclusions as to the issue of causation are inadmissible, both because Mr. Perry will not be testifying as to causation and because Ms. Salters' opinions as to causation constitute impermissible attempts to offer testimony as to a legal conclusion; (2) her opinions on the issue of damages are based only

---

[1] In her report, Ms. Salters states that she has "assumed solely for purposes of responding to the Robroy damages report that T&B is liable for the wrongful acts alleged by Robroy. Even assuming liability, however, Robroy is not entitled to damages unless it can establish that such acts caused damages, computed to a reasonable certainty. Based on my review of the documents produced and deposition testimony given in this matter, there is not an apparent nexus between T&B's allegedly wrongful statements and Robroy's purported damages." Salters Report, Dkt. No. 133-1, at ¶ 39. That characterization incorrectly conflates causation and damages. Under the Lanham Act, causation is an element of liability. IQ Prods. Co. v. Pennzoil Prods. Co., 305 F.3d 368, 375 (5th Cir. 2002) ("The plaintiff must establish five elements to make out a *prima facie* case of false advertising under the Lanham Act: . . . (5) the plaintiff has been or is likely to be injured as a result of the statement at issue."). If the plaintiff fails to prove that the defendant's false advertising caused or is likely to cause injury to the plaintiff, the defendant is not liable for a Lanham Act violation. Causation is thus an element of the tort. Proof of damages is then necessary to determine whether the plaintiff is entitled to a legal remedy for the tort, and in what amount. See Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co., Inc., 520 F.3d 393, 401 (5th Cir. 2008) (after establishing liability under the Lanham Act, the "plaintiff is entitled, 'under the principles of equity,' to recover the profits a defendant gained from its violation of the Act, 'any damages' the plaintiff suffered, and costs.") (quoting remedial provision, 15 U.S.C. § 1117(a)).

on her review of particular information provided to her by counsel and are therefore unreliable; (3) her "regurgitation of facts" from depositions and other sources does not qualify as expert testimony; (4) her opinions as to the reasons that consumers make purchasing decisions in the PVC-coated conduit market are not based on an adequate foundation; and (5) because she is not an expert in the PVC-coated conduit market, her opinions on that subject would not be helpful to the jury.

## DISCUSSION

At the outset, four points need to be made. First, even though Robroy's motion purports to be directed to the exclusion of both Ms. Salters' report and her testimony, it is clear that her report (like Mr. Perry's report) is inadmissible. See Hunt v. City of Portland, 599 F. App'x 620, 621 (9th Cir. 2013) (expert's written report "is hearsay to which no hearsay exception applies"); Worldwide Sorbent Prods., Inc. v. Invensys Sys., Inc., Civil Action No. 1:13-cv-252, 2014 WL 12596585, at *4 (E.D. Tex. Oct. 29, 2014); Bianco v. Globus Med., Inc., 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014) (citing cases); Sommerfield v. City of Chicago, 254 F.R.D. 317, 329 (N.D. Ill. 2008) (citing cases). Other than in the caption of Robroy's Motion to Exclude, neither party has indicated that it intends to offer its expert's report into evidence, but just for clarity, the reports themselves are plainly hearsay and will not be admitted into evidence absent stipulation by the parties; all that is at issue here is the question of the admissibility of the opinion testimony that the parties intend to offer through their expert witnesses.

Second, both experts' reports are divided into a background section and a section summarizing their opinions. The background sections contain some material that seems uncontroversial, such as Ms. Salters' summary of the allegations of the complaint and of the contents of Mr. Perry's expert report, which are found in paragraphs 34-38 of Ms. Salters' report.

5

Some of that material may be admissible through the experts' testimony as necessary introductory information explaining the basis for their opinions. For example, Ms. Salters' description of Mr. Perry's opinions on damages in paragraphs 36-38 may be necessary in order to introduce Ms. Salters' critique of Mr. Perry's opinions.

Other material in the background sections and in the curriculum vitae of the experts seems to be fertile ground for the parties to agree upon, either by stipulating to the information itself, or by stipulating to the admission of those portions of the reports, or by agreeing to permit the experts to testify as to that information. The Court would permit—and indeed welcome— any such procedure that the parties can agree upon as a way of more expeditiously laying out the factual background of the case and the experts' qualifications for the jury. See Mahnke v. Wash. Metro. Area Transit Auth., 821 F. Supp. 2d 125, 154 (D.D.C. 2011) ("[P]arties may stipulate to admission of certain reports and CVs."); Wilson v. Hartford Ins. Co. of the Midwest, No. 10-993, 2011 WL 2670199, at *2-3 (W.D. Wash. July 7, 2011) ("The Court notes that parties often, for ease of presentation of evidence, mutually agree that expert reports are admissible. The court will not, however, force parties to reach such an agreement.").

Third, certain portions of the background sections of the experts' opinions are more tendentious and will not be admitted absent a stipulation by the parties. For example, the background section of Ms. Salters' report contains what amounts to a summary of the defendant's theory of the case, supported by citations to witness depositions. See Salters Report, Dkt. No. 133-1, at ¶¶ 7-33. It is not clear from the parties' papers whether Ms. Salters intends to testify regarding the assertions in those portions of the background section of her report. However, to the extent that T&B intends to offer testimony from Ms. Salters that tracks the contents of those portions of the Background section of her report and Robroy objects, that

evidence will be excluded. As to that evidence, she is not serving as an expert, but is simply passing along information provided by others and laying out the defendant's theory of the case. Whether viewed as a second opening statement for the defense or as the defendant's first summation, that use of expert testimony is improper. Orthoflex, Inc. v. Thermotek, Inc., 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) (Fitzwater, J.) (it is impermissible for an expert witness to be called "merely to present [a party's] trial arguments as expert opinions"). The statements in that portion of Ms. Salters' report are clearly outside the scope of her competence as an expert witness and do not reflect the application of expertise to particular subject matter within the scope of her expertise. Any testimony by Ms. Salters based on that portion of her report will be excluded. This issue is discussed in more detail in section II-A, below.

While there is less material in Mr. Perry's report that is objectionable on this ground, there is some. In particular, his summary of Robroy's complaints about the false statements allegedly made by T&B about Robroy's products, found at page 10 of his report constitutes, in effect, a summary of Robroy's position on the issue of liability and is not admissible as expert testimony absent agreement of the parties.

Fourth, to be clear, the Court's ruling as to the inadmissibility of certain testimony by the expert witnesses does not mean that the underlying evidence on which the experts rely in their reports is inadmissible. Some of the statements alluded to in the experts' reports may well be otherwise admissible. But those statements may not be introduced through the testimony of an expert witness who purports to have acquired expertise regarding the industry as applied to the facts of this case simply by reading witness depositions and reviewing exhibits provided by counsel. See Seatrax, Inc. v. Sonbeck Int'l, Inc., 200 F.3d 358, 372 (5th Cir. 2000); Lyman v. St. Jude Med. S.C., Inc., 580 F. Supp. 2d 719, 726 (E.D. Wis. 2008).

The Court will now turn to the specific issues of admissibility of evidence from each of the expert witnesses.

## I.  T&B's Motion to Exclude the Testimony of Chase A. Perry

### A.  Mr. Perry's Failure to Offer Evidence of Causation

Mr. Perry's proposed damages testimony is inadmissible, according to T&B, because "he offers no basis for showing a causal link between the 55 projects he lists as the foundation for his false-advertising damages analysis to the 'only Ocal' statements-at-issue." T&B's Motion to Exclude, at 8.  According to T&B, the Fifth Circuit has "refused to allow damages testimony in false-advertising cases that failed to rely on sufficient data showing a causal link between the false advertising-at-issue and the alleged damages." Id. at 1.

The Court rejects T&B's argument that a damages expert in a false advertising case may not limit his testimony to damages, but also must testify regarding causation.  Contrary to T&B's submission, it is perfectly permissible for an expert to assume liability (of which causation is an element) and simply focus on the issue of damages.  For example, in U.S. Gypsum Co. v. Lafarge North America Inc., 670 F. Supp. 2d 737 (N.D. Ill. 2009), the defendants sought to exclude the plaintiff's damages witness on grounds similar to those raised by T&B against Mr. Perry in this case.  As the court explained, the defendants took issue not with the expert witness's calculations, but with her initial assumptions regarding the defendant's hypothetical commercial viability and the scope of the defendants' reliance on the plaintiff's information.  The defendants argued that those assumptions were "inconsistent with the evidence, unreliable, and outside of [the witness's] expertise." Id. at 741.  The court rejected that argument, noting that the witness "does not seek to opine that the assumptions underlying her analysis are true in fact.  [The

witness] is an expert on damages, not liability, and she seeks to opine only on what the damages should be *if* the jury separately finds the facts she assumes to be true."  Id.

The same analysis applies to Mr. Perry.  He is a damages witness.  As such, he is allowed to assume liability and address only the issue of damages.  To prove causation, Robroy will be required—and will be permitted—to look to evidence other than the testimony of Mr. Perry.

This principle has been expressed in numerous cases, and it is beyond serious challenge. See Orthofix, Inc. v. Gordon, Case No. 1:13-cv-1463, 2016 WL 1273160, at *3 (C.D. Ill. Mar. 31, 2016) ("It is entirely appropriate for a damages expert to assume liability for the purpose of his or her opinion.  To hold otherwise would be illogical.") (quoting Sys. Dev. Integration, LLC v. Computer Scis. Corp., 886 F. Supp. 2d 873, 882 (N.D. Ill. 2012)); Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. für Chemische Industrie, No. 11-cv-681, 2015 WL 5459662, at *10 (S.D.N.Y. Sept. 16, 2015) ("[A] damages expert does not need to perform her own causation analysis to offer useful expert testimony."); Gaedeke Holdings VII, Ltd. v. Baker, Case No. CIV-11-649, 2015 WL 11570978, at *3 (W.D. Okla. Nov. 30, 2015) ("Proof of causation often comes from fact witnesses, and it is appropriate for expert witnesses to assume causation will be established and then proceed to calculate the damages."); Williams v. Bridgeport Music, Inc., Case No. LA CV 13-6004, 2015 WL 4479500, at *24 (C.D. Cal. July 14, 2015) ("A damages expert may assume as a fact, for purpose of fashioning an opinion, that the technical conclusions of infringement experts are correct and reasonable."); Orthoflex, Inc. v. Thermotek, Inc., 986 F. Supp. 2d at 792 ("Experts are permitted to assume the fact of liability and opine about the extent of damages."); Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd., 986 F. Supp. 2d 574, 656 (W.D. Pa. 2013) ("It is entirely appropriate for a damages expert to assume liability for the purposes of his or her opinion."); Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co., No. 4:05

CV 1934, 2013 WL 4776277, at *8 (E.D. Wis. Sept. 6, 2013) ("damages experts are permitted to 'assume that the defendant's alleged misdeeds caused the plaintiff's loss'"); U.S. Accu-Measurements, LLC v. Ruby Tuesday, Inc., Civ. No. 2:10-5011, 2013 WL 1792463, at *8 (D.N.J. Apr. 26, 2013) ("Expert opinions on damages commonly assume liability, which must be established independently."); RMD, LLC v. Nitto Ams., Inc., No. 09-2056, 2012 WL 5398345, at *10 (D. Kan. Nov. 5, 2012) ("Vianello is not a causation expert.  His expert testimony relates only to damage calculation, not to causation. . . .  For purposes of presenting his damage calculation methods . . . Vianello is permitted to presume causation, which is a prerequisite to recovery that will have to be established at trial by evidence other than Vianello's testimony."); Sancom v. Qwest Commc'ns Corp., 683 F. Supp. 2d 1043, 1068 (D.S.D. 2010) ("It is well settled that a damages expert . . . can testify as to damages while assuming the underlying liability."), aff'd in relevant part, 807 F.3d 1283 (Fed. Cir. 2015); CRST Van Expedited, Inc. v. J.B. Hunt Transport, Inc., No. CIV-04-651, 2006 WL 2054646, at *4 (W.D. Okla. July 24, 2006) ("For the purposes of presenting his damage calculation methods, Mr. Swanson is entitled to presume causation (a prerequisite to recovery which will have to be established by evidence other than Mr. Swanson's testimony)."); Children's Med. Ctr. of Dallas v. Columbia Hosp. at Med. City Dallas Subsidiary, No. 3-04-cv-2436, 2006 WL 616000, at *7 (N.D. Tex. Mar. 10, 2006) ("It is not necessary for Jacobs, or any other damages expert, to establish the requisite causal connection between liability and damages.  Rather, plaintiff may establish causation by other means.").

T&B cites three cases in support of its contrary submission—the Fifth Circuit's decision in IQ Products Co. v. Pennzoil Products Co., 305 F.3d 368 (5th Cir. 2002), and two district court cases, Snac Lite, LLC v. Nuts 'N More, LLC, Case No. 2:14-cv-1695, 2016 WL 6778268 (N.D.

Ala. Nov. 16, 2016), and <u>3M Innovative Properties Co. v. DuPont Dow Elastomers LLC</u>, 361 F. Supp. 2d 958 (D. Minn. 2005). None of those cases provides any support for T&B's position on this issue, as none of them stands for the proposition that damages testimony is inadmissible if the expert does not point to a causal link between false advertising and the alleged damages.

It is true, of course, that if an expert purports to testify as to the causal link between false advertising and damages, the expert must base his opinion on reliable evidence. But that is a very different proposition from T&B's suggestion that an expert who testifies about damages may not assume liability and limit his testimony to the damages issues. The cases on which T&B relies do not stand for the proposition that a damages expert may not testify in a false advertising case unless his testimony establishes a "reliable link" between the alleged false statements and the damages the plaintiff claims to have suffered. Instead, those cases deal with experts who were offered to testify as to causation and whose testimony was found to fall short of satisfying that element. Mr. Perry is not being offered as a witness on causation; the cited cases therefore do not support T&B's argument that Mr. Perry's testimony should be barred because of his failure to establish a causal link between T&B's false statements and Robroy's losses.

In the <u>IQ Products</u> case, the plaintiff, IQ, sought to prove through two expert witnesses that the company suffered harm from the false statements at issue in the case. As the Fifth Circuit explained, the witnesses sought to testify as to "the effect on the buying decisions of consumers" and "the damage to IQ as a result." 305 F.3d at 376. The district court excluded the witnesses' testimony, and the court of appeals affirmed, holding that neither expert conducted reliable survey or market research, commonly employed by market analysts, to support their conclusions" that consumers would have purchased the plaintiff's products were it not for the

defendants' allegedly misleading statements about the [competing] product." Id. The Fifth Circuit's opinion makes clear that the court sustained the exclusion of the expert witnesses' testimony because the witnesses purported to testify about causation and failed to present sufficiently reliable evidence on that issue. Mr. Perry does not purport to testify about causation, and he has expressly limited his testimony to damages. IQ Products therefore does not support T&B's motion to exclude his testimony.

The same is true of the two district court cases cited by T&B. In both cases, the expert offered testimony on causation, testimony that the courts found unreliable. See Snac Lite, 2016 WL 6778268, at *6-7; 3M Innovative Properties, 361 F. Supp. 2d at 971-73. Mr. Perry is not being offered as a witness on causation, so those cases are inapplicable here.

Much of T&B's motion, which focuses almost entirely on the issue of causation, is therefore beside the point. Even when T&B purports to address the issue of damages, its arguments frequently bleed over into quarrels with Robroy's proof of causation. See, e.g., T&B Motion to Exclude, Dkt. No. 136, at 4 ("Nor does Mr. Perry cite or rely on any evidence showing that the statements-at-issue caused Robroy to lose sales to T&B, or caused T&B to obtain such sales and profits."); id. at 5 ("Mr. Perry also ignores Robroy's own consumer-survey data, deposition testimony, and other data showing that customers in this area did not rely on T&B's alleged statements-at-issue, or that its advertising played any role in customers' purchasing decisions.").

T&B argues at one point that, unlike in patent law, "there is no corresponding assumption of infringement and validity in false-advertising law," thus seemingly contending that a damages expert in a false advertising case cannot assume liability, but must testify as to causation as well as damages. T&B's Motion to Exclude, at 11. T&B cites no support for that proposition, and

the Court is unaware of authority in any area of the law that would prohibit a damages expert from confining his or her testimony to the issue of damages, while assuming that liability has been established. The numerous cases cited above come from a wide range of legal fields, including contract disputes and many different types of business torts. All of them support the proposition that damages experts may, and often do, testify only about damages while assuming liability, which is proved through other evidence. If T&B wished to persuade this Court that a different and special rule applies in Lanham Act cases, it would have been expected to come up with some statutory language or case law to that effect, or at least with an explanation for why such a rule would make sense. It has not done so.

**B. Mr. Perry's Reliance on Insufficient and Unreliable Speculation**

T&B next argues that Mr. Perry has impermissibly relied on "speculative and unreliable data" to support his opinions regarding the ranges of possible damages, i.e., the "estimated minimum and maximum sales values" for the projects that are the subjects of Robroy's claims. T&B's Motion to Exclude, at 11. T&B complains that Robroy has relied on evidence such as "speculative e-mails and deposition testimony, mere bids and sales quotes, internal T&B forecasts, and—on some occasions but not others—the TOPS report that T&B provided at Robroy's request to construct the 'estimated value' of the 55 alleged implicated projects." Id.

Mr. Perry's reliance on varied sources of information as to the value of the projects at issue in this case was required in large part because T&B was unable to provide complete information in discovery regarding those projects. Accordingly, Mr. Perry was required to use

information from other sources, in particular information produced by T&B and its representatives in discovery, to derive financial data regarding the projects.[2]

T&B has not challenged the reliability of the financial information in each of the documents on which Mr. Perry relied. Accordingly, the Court will not review Mr. Perry's report on a document-by-document basis. Instead, T&B focuses on two examples (presumably extreme examples) that in T&B's view show that some of the evidence Mr. Perry uses in his analysis is unreliable. In the first example, Mr. Perry relies on an email from a T&B project manager stating the expected sales of Ocal (T&B's PVC-coated conduit product) from the project, although internal T&B records showed much smaller actual sales to that party. In the second example, Mr. Perry relied on deposition testimony by a T&B product specification specialist, who estimated the amount of Ocal that T&B sold to that purchaser. T&B notes that the project manager characterized his estimate as "a guess." T&B's Motion to Exclude, at 12.

Mr. Perry's use of different measures of the amounts of T&B's sales on different projects is permissible, particularly in light of T&B's inability to provide such information from its own files. Mr. Perry relies on evidence obtained from T&B to set the minimum sales value for many of the subject projects. His use of T&B's information for that purpose is permissible. In several instances, Mr. Perry relied on other evidence, such as testimony from T&B representatives, to set the maximum sales values for certain projects. Mr. Perry's reliance on such evidence does not require that his testimony be excluded, even though the resulting range between the minimum

---

[2] T&B faults Robroy for not obtaining that information from T&B's distributors. The Court need not make a finding as to whether the distributors would have had such information— something that one T&B witness said they would not, see Dkt. No. 195-2, at 42-43. Nor will the Court speculate on whether obtaining the information in question from T&B's distributors would have been easier for T&B than for Robroy. Even if more reliable evidence could have been obtained from T&B's distributors, the Court will not exclude Mr. Perry's testimony on the ground that he relied on other sources of information regarding T&B's sales on particular projects in addition to the information T&B produced in discovery relating to those projects.

and maximum estimated sales values is, in some cases, quite large, and the data on which Mr. Perry relies for some of the maximum values is only an estimate.

T&B's challenge goes to the weight to be assigned to Mr. Perry's opinions, not their admissibility. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be left for the jury's consideration." <u>Viterbo v. Dow Chem. Co.</u>, 826 F.2d 420, 422 (5th Cir. 1987); <u>see also</u> <u>Fair v. Allen</u>, 669 F.3d 601, 607 (5th Cir. 2012) (noting that an expert's opinion will be excluded on this ground only when, for example, it is "completely unsupported," and "the opposing party must expose that lack of reliability."). Some of the sales value numbers recited by Mr. Perry are likely to be less reliable (and certainly less precise) than others, and T&B has pointed to several of them. But Mr. Perry's reliance on those numbers will be subject to challenge at trial. Robroy's position is that those numbers were the most precise available given T&B's failure to provide more complete data, including exact sales values for certain projects. T&B's position is that those numbers are unreliable even though they may have originated with T&B. But it is not unreasonable to place the burden on T&B to show that sales values that originated with its employees and its documentary productions are inaccurate. For that reason, the Court will not exclude Mr. Perry's testimony on the ground that the evidence on which he bases his sales value estimates is unreliable.

### C. Robroy's "Attenuated" and "Speculative" Evidence of Injury

Finally, T&B argues that "Mr. Perry's opinions are not relevant or a fit to the task at hand of determining a party's false-advertising damages" because the injuries that Mr. Perry describes are "the speculative and attenuated harm that the statements-at-issue merely enabled T&B to potentially make conduit sales to a customer." <u>T&B's Motion to Exclude</u>, Dkt. No. 196, at 13.

This argument circles back to T&B's contention that Mr. Perry's testimony should be excluded because he fails to offer evidence that T&B's conduct caused the injury of which Robroy complains. The answer to this iteration of T&B's causation argument is the same now as it was before: Mr. Perry does not purport to testify as to causation, and he is not required to do so. T&B's arguments about the insufficiency of Robroy's proof of causation (and thus actionable injury) are therefore misdirected when employed in an effort to have Mr. Perry's testimony excluded.

For the foregoing reasons, the Court DENIES <u>T&B's Motion to Exclude</u>.

## II. Robroy's Motion To Exclude the Testimony of Ambreen Salters

Ms. Salters proposes to testify as to issues of causation and damages. Her opinions on those topics are summarized in paragraphs 39 through 82 of her report.

### A. Evidence as to Causation

Much of Ms. Salters' expert report consists of her opinion and explanation of why she believes that Robroy has not established a causal link between T&B's alleged false statements and any injury suffered by Robroy. <u>Salters Report</u>, Dkt. No. 133-1, at ¶¶ 39, 41-60. There are several problems with her prospective testimony on that subject.

First, Ms. Salters is not an expert in the PVC-coated conduit industry or any related field. She is an economist. As such, she may be qualified to address subjects such as the calculation of damages, but she is not qualified to speak as an expert on the PVC-coated conduit market, and certainly not on whether particular behavior by one player in that market has caused injury to another.

Second, Ms. Salters argues that Robroy's evidence fails to establish causation because Robroy ignores "documented reasons that T&B made and Robroy lost specific projects such as

price, features, relationship, product bundling and the desire for multiple vendors and Robroy's own business practices." Salters Report, Dkt. No. 133-1, at 15. As support for that assertion, Ms. Salters cites "StoneTurn Workpaper 4," which is a spreadsheet attached to her expert declaration. The spreadsheet contains information about various projects that are at issue in this case. That information includes a column entitled "Reasons Ocal Added/Won" and another column entitled "Comments." The "Reasons" column contains entries such as "pricing," "pricing/quality," and "pricing/offering." Salters Report, Dkt. No. 133-1, Attachment (StoneTurn Workpaper 4).

Ms. Salters contends that Robroy's internal project tracking documents "show that Robroy recognizes the variety of reasons that customers choose PVC-coated conduit or one of the less expensive alternatives." Salters Report, Dkt. No. 133-1, at ¶ 45. It appears that based on her preparation and/or study of the StoneTurn Workpaper, her reading of depositions of certain witnesses in the case, and her review of certain Robroy documents, Ms. Salters proposes to testify that because of the variety of reasons that may explain a contractor's decision to use a particular vendor on a project, Robroy "fails to establish an actual nexus between T&B's sales and their allegedly false 'only Ocal' statements." Salters Report, Dkt. No. 133-1, at ¶ 65. Citing a deposition, her report adds that Robroy "was not removed from the specifications for any customer identified by the Plaintiffs," but that T&B was simply added as an approved manufacturer or allowed to bid and sell conduit" on certain projects. Id. at ¶ 64. Finally, again citing deposition testimony, Ms. Salters states that "specifications are simply customer preferences, and to bid a project, the manufacturer does not 'have to be on the specification to make a bid.'" Id.

It is evident to the Court that T&B's intention is to use Ms. Salters to testify about various statements made in certain depositions and documents in the case in support of her conclusion that Robroy has failed to show that the false statements allegedly made by T&B agents caused injury to Robroy quantifiable as damages. Yet Ms. Salters has no expertise in the PVC-coated conduit industry or in any other field that would qualify her to give such testimony. It is clear that her testimony would simply be a regurgitation of information she (or others) have collected, either in the form of deposition extracts or documents regarding the reasons others have given for purchasing decisions.

Third, while courts often permit experts to testify on the issue of causation, particularly medical experts in cases involving injury or disease, it is less obvious that expert witnesses can typically be helpful to the jury on the issue of causation in other settings. In a case such as this one, where the question is whether a party's false advertising caused the opposing party to lose sales, the issue of causation seems to depend on an assessment of the particular facts of the case, which does not require specialized knowledge possessed by an expert. But even if it were possible for a person with pertinent expertise in a particular industry, or a person with knowledge of how consumers respond to advertising in making purchasing decisions, to provide useful assistance to a jury on the issue of causation, a person with no such expertise cannot qualify as an expert on what causes customers in that industry to make purchasing decisions simply by reading deposition testimony and documents in a case and then telling the jury that the deposition testimony and documents show that the conduct at issue did not cause the plaintiff's loss.

More generally, denominating a witness as an expert does not give that witness leave to simply read materials such as exhibits and depositions in the case and then testify as to their

contents. Such evidence is not helpful to the jury "where the jury can easily reach reliable conclusions based on common sense, common experience, and the jury's own perceptions, or . . . where there is other evidence or other means to put the jury in a position to accurately decide the facts." Charles Alan Wright and Victor Gold, Federal Practice & Procedure § 6265.2, at 267-68 (2016). Nor is it proper to use an expert witness simply to summarize the evidence proffered by the party that hired him. As Judge Posner recently remarked: "[A]n expert witness may not simply summarize the out-of-court statements of others as his testimony. . . . An expert who parrots an out-of-court statement is not giving expert testimony; he is a ventriloquist's dummy." United States v. Brownlee, 741 F.3d 479, 482 (7th Cir. 2014).

Numerous cases support that proposition, beginning with the Fifth Circuit's decision in Factory Mutual Insurance Co. v. Alon USA LP, 705 F.3d 518 (5th Cir. 2013), where the court said, "Rule 703 'was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.'" Id. at 524 (quoting Loeffel Steel Prods., Inc. v. Delta Brands, Inc., 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005)); see also United States v. Cormier, 468 F.3d 63, 73 (1st Cir. 2006) (quoting United States v. Smith, 869 F.2d 348, 355 (7th Cir. 1989) ("an expert may not simply summarize the out-of-court statements of others as his testimony"); Olivet Baptist Church v. Church Mut. Ins. Co., 13 C 1625, 2016 WL 772787, at *5 (N.D. Ill. Feb. 29, 2016) ("'[r]elaying the plaintiff's likely testimony is not an example of expertise.'") (quoting Lang v. Kohl's Food Stores, Inc., 217 F.3d 919, 924 (7th Cir. 2000)); SAS Inst., Inc. v. World Programming Ltd., 125 F. Supp. 3d 579, 587 (E.D.N.C. 2015) ("Rule 702 does not grant an expert an unlimited license to testify in a manner that simply summarizes otherwise admissible evidence without some connection to the expert's expertise. . . . When an

expert summarizes evidence for the jury, the cornerstone of admissibility is the expert's reliance on his or her expertise in conveying that summary."); Modica v. Maple Meadows Homeowners Ass'n, Civil Action No. 13-36, 2014 WL 1663150, at *1 (E.D. Pa. Apr. 2, 2014) (excluding expert testimony that "merely summarizes deposition testimony"); Orthoflex, Inc. v. Thermotek, Inc., 986 F. Supp. 2d at 798 ("Although in forming an independent opinion an expert can rely on information provided by a party's attorney, an expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him."); In re C.R. Bard, Inc., 948 F. Supp. 2d 589, 608 (S.D.W. Va. 2013) ("Expert testimony which merely regurgitates factual information that is better presented directly to the jury rather than through the testimony of an expert witness is properly excluded."); Kia v. Imagine Scis. Int'l, Inc., No. 08-5611, 2010 WL 3431745, at *5 (E.D. Pa. Aug. 30, 2010) ("[A] party may not filter fact evidence and testimony through his expert merely to lend credence to the same nor may expert testimony be used merely to repeat or summarize what the jury independently has the ability to understand."); Crowley v. Chait, 322 F. Supp. 2d 530, 553 (D.N.J. 2004) ("[N]either [the expert] nor any other witness will be permitted to simply summarize the facts and the depositions of others."); SEC v. Lipson, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) ("Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand.").

The danger of allowing an expert to simply summarize evidence provided to the expert by the party that retained him is, of course, that the expert will become a vehicle through whom the party can summarize its case for the jury, with the imprimatur of the expert's asserted "expertise." Courts have regularly barred experts from testifying in that manner. See, e.g., Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992) ("[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument."); Orthoflex, Inc. v.

Thermotek, Inc., 986 F. Supp. 2d at 798 ("Nor is it acceptable for a party to call a witness who, after synthesizing the party's trial arguments, presents them as expert opinions."); MGM Well Servs., Inc. v. Mega Lift Sys., LLC, Civil Action No. H-05-1634, 2007 WL 150606, at *4 (S.D. Tex. Jan. 16, 2007) (excluding witness whose testimony was "an effort to synthesize [the party's] positions and present them summarily as an expert opinion"); Stinson Air Ctr., LLC v. XL Specialty Ins. Co., Civil No. SA-03-CA-61, 2005 WL 5979096, at *3 (W.D. Tex. July 8, 2005) (The expert's opinion was primarily based upon conversations with the defendant's owner and in part on conversations with the defendant's attorney. "Because the opinions given are based solely upon representations of a party with an interest in the outcome of this lawsuit, without any independent review of ordinary sources of financial analysis," the expert's opinion testimony was excluded.).

Ms. Salters brings nothing to the table by way of pertinent expertise on the issue of causation, particularly in the PVC-coated conduit industry. The field of her expertise—economics—puts her in no better position to testify as to the causes of contract awards in the PVC-coated conduit industry generally, or in the circumstances of this case in particular, than any person who has looked through the records of this case.

In particular, Ms. Salters' testimony regarding the "considerations influencing the purchase decision," Salters Report, Dkt. No. 133-1, at ¶¶ 45-57, is inadmissible because it simply parrots deposition evidence and exhibits produced during the pretrial process. Ms. Salters' testimony on that issue would not be amenable to meaningful cross-examination, because her opinions on that topic are not the product of her expertise, but instead simply constitute her assessment of the particular parts of the record on which she has chosen to rely.

For example, Ms. Salters asserts that one explanation for customers' decisions to choose T&B product is "Robroy Business Practices." Salters Report, Dkt. No. 133-1, at ¶¶ 55-56, Ms. Salters states: "Robroy had a 'reputation for price gouging' with many engineering firms that complained about price increases after Robroy sole-sourced a spec." Id. at ¶ 55. That conclusion is supported by a reference to a deposition of David Marshall, a Robroy employee. While the deposition excerpt may be independently admissible, it is not admissible as substantive expert evidence from Ms. Salters; in citing that deposition excerpt, she has brought no expertise to the enterprise other than the ability to read and to copy what she has read.

Accordingly, the portions of Ms. Salters' proposed testimony dealing with causation (paragraphs 39, 41-60) will be excluded at trial.

**B. Evidence as to Damages**

Robroy argues that Ms. Salters' proposed testimony as to damages must be excluded as well because, inter alia, her opinions on damages are unreliable and ultimately rely on data that was "filtered by T&B." In particular, Robroy complains that Ms. Salters relied on data from T&B's "TOPS reports," which were prepared by T&B and which she characterized as the most reliable data available regarding T&B's sales of PVC-coated conduit during the period at issue in this case.

The "damages" portion of Ms. Salters' report begins with a section entitled "Robroy Does Not Establish Causal Nexus to Damages." In that section of her report, she points out that Mr. Perry's report "reflects no attempt to establish the required causal nexus between Defendant's allegedly wrongful conduct and the resulting harm for any of Robroy's causes of action." Salters Report, Dkt. No. 133-1, at 14. As noted above, Mr. Perry does not purport to testify as to causation, so Ms. Salters' criticism of his report on that ground is misdirected. Of

course, it is legitimate for Ms. Salters to point out that Mr. Perry's damages evidence assumes a causal nexus between liability and damages. In particular, she will be permitted to point out that the assumed causal nexus requires the assumption that T&B's allegedly false statements about Ocal resulted in T&B making sales because the customers who purchased Ocal's PVC-coated conduit would otherwise have purchased Robroy's product instead. However, while Ms. Salters will be permitted to point out that Mr. Perry has assumed causation, she will not be allowed to testify substantively about the issue of causation for the reasons given in Part II-A, above.

As for Ms. Salters' assertion in that portion of her report that the conduit market and the PVC-coated conduit market are not "two player markets," that assertion is not based on any expertise of Ms. Salters, but appears to be drawn from depositions and exhibits developed during discovery. Absent a showing that Ms. Salters is doing anything more than simply relaying hearsay evidence from other sources, that "opinion" of Ms. Salters will not be admitted.[3]

Much of Ms. Salters' proffered evidence on damages consists of a critique of Mr. Perry's damages testimony. As such, her testimony on that subject is admissible to the extent that it constitutes analysis of economic data on which the opposing party is relying—precisely the kind of testimony that an expert witness with a background in economics can usefully provide. However, that portion of Ms. Salters' report contains some materials that are not admissible. In particular, her testimony that "specifications are simply customer preferences, and to bid a project, the manufacturer does not 'have to be on the specification to make a bid,'" is

---

[3] As the District of Columbia Court of Appeals correctly noted, "[W]hile experts may rely on hearsay to form their opinions, their testimony is not a vehicle by which evidence that is otherwise inadmissible may be introduced," without regard to the hearsay rule. Presley v. Commercial Moving & Rigging, Inc., 25 A.3d 873, 893 (D.C. 2011). Even if the evidence in question is otherwise admissible, it is not helpful to the jury for a witness with no expertise in a field to offer particular evidence and then repeat, in the form of an expert opinion, the evidence just offered. See Sommerfield v. City of Chicago, 254 F.R.D. at 331.

information taken directly from the depositions of two T&B witnesses. Ms. Salters has no apparent independent basis for knowledge on that point, so in that regard she is serving merely as a conduit for the statements of other witnesses—something that is improper for a purported expert witness, given her lack of expertise in the industry.

What Ms. Salters will be permitted to do is to point out assumptions underlying Mr. Perry's damages estimates, such as that the market has only two producers of PVC-coated conduit, or that there are no acceptable substitutes in the market for PVC-coated conduit. With respect to those factors, she can point out (if it is true) that there is evidence introduced at trial that is contrary to Mr. Perry's assumptions. What she may not do is to put the imprimatur of her expertise on that evidence by stating as a fact that the market has more than two significant competitors or that there are acceptable substitutes for PVC-coated conduit.

Ms. Salters' testimony about possible double counting of losses by Mr. Perry is also admissible. See Salters Report, Dkt. No. 133-1, at ¶¶ 74-76. In addition, it is legitimate for Ms. Salters to give her opinion that Mr. Perry improperly used T&B quotations to estimate the amount of sales that were made to particular customers. See Salters Report, Dkt. No. 133-1, at ¶¶ 77-78. Finally, it is legitimate for Ms. Salters to offer her criticisms of Robroy's calculations of lost profits and disgorgement, and to provide her estimates of those amounts instead. Id. at ¶¶ 79-82.

The point is that the two experts may assume facts that are in dispute—as long as they make it clear they are assuming those facts—and then present competing models for damages. Moreover, they may propose economic models for measuring damages, and they each may criticize the model proposed by the other. What they may not do is to offer substantive evidence as to factual issues such as causation, the nature of the PVC-coated conduit market, and the

reasons that customers may have chosen T&B products over Robroy products in particular instances, subjects on which they have no demonstrated expertise.

Accordingly, the Court GRANTS IN PART and DENIES IN PART <u>Robroy's Motion to Exclude</u>.

IT IS SO ORDERED.

SIGNED this 10th day of April, 2017.


_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE